IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| **KANIKA T. WIGGINS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 1:21-00534** |
| v. ) | |
| ) | |
| **WARDEN CARVER,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

On September 22, 2021, Plaintiff, acting *pro se*, filed her letter-form Complaint seeking relief pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971) and "Motion Requesting Waiving Exhaustion." (Document No. 1).[1] In her Complaint, Plaintiff names the following as Defendants: (1) Warden Carver; and (2) BOP Director Carvajal. (Id.) Plaintiff alleges that she, and other similarly situated inmates at FPC Alderson, are "at a substantial risk of serious illness or death." (Id., p. 1.) Plaintiff explains that she is "living in an open style dorm with no way to socially distance." (Id.) Plaintiff alleges that there is a risk of "cross-contamination between the infected unit and other units." (Id.) Plaintiff claims that "non-working inmates are forced to be exposed [to COVID] by inmates who work with sick officers." (Id.) Plaintiff asserts that BOP staff fail to ensure testing of "exposed inmates and staff" and "refuse to lockdown the prison at inmates' request to keep themselves safe from contracting the disease." (Id.) Finally, Plaintiff complains that "staff refuse to wear masks (even while in the infected unit), as well as [providing] limited cleaning and watered-down

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

cleaning supplies." (Id., pp. 1 – 2.) Plaintiff requests the following relief: (1) "[R]educe the population of FPC Alderson to promote social distancing;" (2) "[B]etter organize modified movement to eliminate cross contamination or complete lockdown of the facility;" (3) "[T]est any and all exposed inmates and staff as well as quarantine those individuals;" (4) "[M]ove non-workers out of the working unit to reduce exposure;" (5) "[R]estrict appointment to emergency only;" (6) "[R]educe classes to per unit or personal activity;" (7) "[M]andate all staff and inmates to wear masks;" and (8) "[P]rovide effective cleaning supplies." (Id., p. 2.)

In conjunction with her Complaint, Plaintiff files a "Motion Requesting Waiving Exhaustion." (Id., pp. 3 - 4.) Citing United States v. Zukerman, 451 F.Supp.3d 329 (S.D.N.Y. 2020) and United States v. Doyle, 2020 U.S. Dist. LEXIS 143410 (E.D.Va. Aug. 10, 2020), Plaintiff argues that courts throughout the country "have found the coronavirus pandemic, combined with vulnerable defendants with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement." (Id.) Plaintiff claims that she, and other similarly situated inmates, "are living in dangerous, inhumane, and cruel and usual punishing conditions." (Id.) Plaintiff argues that the "substantial risk of serious illness violates the BOP's duty to guarantee safety to the inmates." (Id.) Plaintiff asserts that the "conditions within the place of incarceration, and the spread of the coronavirus would make enforcing the exhaustion requirement futile, result in undue prejudice, and provide inadequate relief." (Id.) Finally, Plaintiff argues that delay could subject her to "severe illness and potentially death if [she] contracts the virus while incarcerated." (Id.)

## **STANDARD**

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On

screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle her to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## DISCUSSION

**1.     Bivens Claim:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion

---

[2] 42 U.S.C. § 1997e(a) provides as follows:
> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, 578 U.S. 632, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'"); also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983 or Bivens action, the Court must dismiss the unexhausted

claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that she has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which she did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at

921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust her administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28

C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In her Complaint/Motion Requesting Waiver of Exhaustion, Plaintiff acknowledges that she did not even attempt to exhaust her available administrative remedies. (Document No. 1, pp. 3 - 4.) There is no indication or allegation that the administrative remedy process was unavailable.

Citing <u>Zukerman</u> and <u>Doyle</u>, however, Plaintiff indicates that she did not present facts relating to her complaint in the prisoner grievance procedure because she believes such a requirement should be waived due to the COVID pandemic. (<u>Id.</u>) Thus, it is apparent from the face of Plaintiff's initiating documents that she failed to fully exhaust her administrative remedies prior to filing her Complaint. <u>See</u> <u>Custis</u>, 851 F.3d. at 361; <u>Banks</u>, 694 Fed. Appx. at 160. The undersigned further finds that Plaintiff's reliance upon <u>Zukerman</u> and <u>Doyle</u> to support her argument that the exhaustion requirement should be waived, is misplaced. First, the undersigned notes that <u>Zukerman</u> and <u>Doyle</u> are non-binding authority upon this Court. Second, both the decisions in <u>Zukerman</u> and <u>Doyle</u> involve a request for compassionate release pursuant to 18 U.S.C. § 3582(c) and the waiver of Section 3582's exhaustion requirements due to COVID. Thus, <u>Zukerman</u> and <u>Doyle</u> are inapplicable to the instant action. Furthermore, this District has considered and rejected a defendant's claim that the exhaustion requirements of Section 3582 should be waived due to the COVID pandemic. <u>United States v. Thompson</u>, 458 F.Supp.3d 482 (S.D.W.Va. May 5, 2020). In <u>Thompson</u>, the Honorable United States District Judge Joseph R. Goodwin explained that Section 3582 unambiguously mandated exhaustion and provided no exception for exigent circumstances. <u>Id.</u> at 485-86. Although Judge Goodwin acknowledged the risks that COVID poses in the federal prison system, Judge Goodwin determined "circumventing the exhaustion requirement thus removing the agency's expertise from the process is shortsighted." <u>Id.</u> Specifically, Judge Goodwin explained "[w]here a governmental agency has more expertise and resources to make a determination such as this, and the statute requires an expeditious exercise of that decision making, then it is wholly inappropriate for the court to intervene." <u>Id.</u> Similar to the exhaustion requirements of Section 3582, the exhaustion requirement for a <u>Bivens</u> action is clearly mandated by statute (the PLRA). As stated above, "a court may not excuse a failure to exhaust" because the

PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross, 578 U.S. at 632, 136 S.Ct. at 1856-57("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). In the instant case, it is clear from the face of Plaintiff's initiating documents that she decided to forego the administrative remedy process because she believed exhaustion should be waived due to the risks associated with COVID. The United States Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements. . . ."[3] Booth v. Churner, 532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); also see Massey, 196 F.3d at 727("[T]here is no futility exception to the PLRA's exhaustion requirement."); Jacocks v. Hedrick, 2006 WL 2850639, * 5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his eye were not special circumstances that would excuse his failure to exhaust where he had filed prior grievances complaining of other matters). Based on the foregoing, the undersigned respectfully recommends that Plaintiff's Complaint be dismissed in view of her failure to exhaust her administrative remedies.

2.  **Plaintiff's Motion for Temporary Restraining Order:**

On September 22, 2021, Plaintiff also files an "Emergency Motion for Temporary Restraining Order Pursuant to § 65(b)." (Document No. 3.) Specifically, Plaintiff requests an order

---

[3] Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury.

requiring Defendants "to implement appropriate measures to maximize social distancing by transferring inmates to home confinement that have COVID-19 risk factors, granting compassionate release to those inmates who are most vulnerable,[4] and transferring any remaining inmates to safer BOP facilities as to allot for a reduction in the inmate population to meet CDC social distancing guidelines." [5] (Id.) Plaintiff concludes the foregoing is necessary because "[t]he

---

[4] Pursuant to 18 U.S.C. § 3582, a Court may modify or reduce a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . .." 18 U.S.C. § 3582(c)(1)(A). If such circumstances exist, the sentencing court may modify or reduce the term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a), and finding that "extraordinary and compelling reasons warrant such a reduction and "that a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). A Section 3582 Motion requesting compassionate release, however, must be filed with the sentencing court. *See* 18 U.S.C. 3582(c)(1)(A); *also see Young v. Warden of FCI Williamsburg*, 2020 WL 4195166, * 4 (D.S.C. May 27, 2020), *report and recommendation adopted by*, 2020 WL 4194629 (S.D.W.Va. July 21, 2020)(This Court "has no authority under the First Step Act to consider a request for compassionate release since Petitioner was not sentenced in this Court. Only a sentencing court can allow a sentence reduction/compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which means that the process must be undertaken in the district court where the prisoner was sentenced."); *Bart v. Reherman*, 2020 WL 3421774, * 6 (S.D.W.Va. April 8, 2020), *report and recommendation adopted by*, 2020 WL 3421481 (S.D.W.Va. June 22, 2020)(stating that "[c]ourts in this Circuit and elsewhere have consistently found that a § 2241 petition is not the appropriate mechanism by which to raise a request for compassionate release under § 3582, as such a request must instead be brought in the sentencing court.")(collecting cases); *Deffenbaugh v. Sullivan*, 2019 WL 1779573, * 2 (E.D.N.C. April 23, 2019)("If petitioner now seeks to file his own motion for compassionate release, such a motion must be filed in the sentencing court."); *Robinson v. Wilson*, 2017 WL 5586981, * 5 (S.D.W.Va. Sept. 26, 2017), *report and recommendation adopted by*, 2017 WL 5586272 (S.D.W.Va. Nov. 20, 2017)("Like a § 2255 Motion, a § 3582 motion must be filed in the movant's underlying criminal action and addressed by the sentencing court.").

[5] The Court lacks authority to grant Plaintiff's request that this Court enter an order transferring her to a different prison facility. The classification and transfer of federal prisoners falls within the broad discretion of the Bureau of Prisons and Courts lack authority to order that a prisoner be confined to any particular institution. *See* 18 U.S.C. § 3621(b)(the BOP shall designate the place of an inmate's confinement); *also see McKune v. Lile*, 536 U.S. 24, 40, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002)("It is well settled that the decision where to house inmates is at the core of prison administrators'' expertise."); *Meachum v. Farno*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539,

risk of contracting COVID-19 as a result of unsafe conditions of confinement constitutes irreparable harm." (Id.)

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed.R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in <u>Hoechst Diafoil Company v. Nan Ya Plastics Corporation</u>, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' <u>Granny Goose</u>, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction *must* establish that [1] she is likely to succeed on the merits, [2] that she is likely to suffer irreparable harm in the absence of preliminary relief, [3] that

---

49 L.Ed.2d 451 (1976)(the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP); *United States v. Williams*, 65 F.3d 301, 307 (2nd Cir. 1995)("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons."); *Milhouse v. O'Brien*, 2014 WL 12521373, (N.D.W.Va. Feb. 25, 2014)(denying plaintiff's motion for temporary or preliminary injunction where plaintiff failed to satisfy the first *Winter's* factor because he could not succeed on his request for a transfer to a different prison facility); *Hinton v. Federal Bureau of Prisons*, 2009 WL 3347158, * 4 n. 5 (S.D.W.Va. Oct. 14, 2009)(J. Johnston)("Inmates . . . have no constitutional right to be housed in any particular prison or jail, regardless of security classification.").

the balance of equities tips in her favor, and [4] that an injunction is in the public interest." <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)(emphasis added). [A]ll four requirements must be satisfied." <u>The Real Truth About Obama, Inc. v. Federal Election Commission</u>, 575 F.3d 342, 346 (4th Cir. 2009), *judgment vacated on other grounds*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).[6] The Fourth Circuit has explains that "[b]ecause a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." <u>Id.</u> Furthermore, the Supreme Court "rejected a standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was 'inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief." <u>Id.</u>(citing <u>Winters</u>, 55 U.S. at 22, 129 S.Ct. at 375-76.) Thus, a Court may not issue a preliminary injunction or temporary restraining order "simply to eliminate a possibility of a remote future injury." <u>Kates v. Packer</u>, 2014 WL 1218905, * 3 (M.D.Pa. March 24, 2014)(quoting <u>Holiday Inns of America, Inc. v. B&B Corp.</u>, 409 F.2d 614, 618 *3rd Cir. 1969)("The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat."'). The irreparable harm alleged by movant must be "neither remote nor speculative, but actual and imminent." <u>Direx Israel, Ltd. v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 812 (4th Cir. 1991), *abrogation recognized on other*

---

[6] The United States Supreme Court vacated the original decision in *Real Truth* for further consideration in light of *Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). *The Real Truth About Obama, Inc. v. Federal Election Commission*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010). The Fourth Circuit, however, reissued its opinion on Parts I and II of its opinion. *The Real Truth About Obama, Inc. v. Federal Election Commission*, 607 F.3d 355 (4th Cir. 2010).

*grounds*, Sarsour v. Trump, 245 F.Supp.3d 719, n. 6 (4th Cir. 2017); also see Kates, 2014 WL 1218905 at * 3(The irreparable harm must be "actual and imminent, not merely speculative.") As the Fourth Circuit has explained, the Court is no longer required to balance the irreparable harm to the respective parties. Real Truth, 575 F.3d at 347. Rather the movant must make a clear showing that he is likely to be irreparably harmed, and the Court must "pay *particular regard* for the public consequences in employing the extraordinary remedies of an injunction." Id.(citations omitted).

For the reasons fully explained above, the undersigned has recommended that Plaintiff's Complaint be dismissed for failure to exhaust. Accordingly, the undersigned finds that Plaintiff's request for a temporary restraining order and injunctive relief should be denied as she cannot establish that she is likely to succeed on the merits.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's "Motion Requesting Waiving Exhaustion" (Document No. 1, pp. 3 - 4), **DENY** Plaintiff's "Motion for Temporary Restraining Order Pursuant to § 65(b)" (Document No. 3), **DISMISS** Plaintiff's Complaint (Document No. 1, pp. 1 - 2), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections

identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: September 30, 2021.

Omar J. Aboulhosn
United States Magistrate Judge